# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ROBERT BRISCOE, III,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD MADRID, et al.,<br><br>Defendants. | **Case No. 1:17-cv-0716-DAD-SKO**<br><br>**FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S THIRD AMENDED COMPLAINT BE DISMISSED WITHOUT LEAVE TO AMEND**<br><br>**(Doc. 37)**<br><br>**30-DAY DEADLINE** |

## I. BACKGROUND

Plaintiff, James Robert Briscoe, III, is a prisoner in the custody of the California Department of Corrections and Rehabilitation and is currently housed at the California Health Care Facility in Stockton, California. On November 22, 2017, Plaintiff, proceeding pro se, filed his Second Amended Complaint against Defendants Richard Madrid "individually and in his official capacity"; "Fresno City Police 1 through 20 individually and in their official capacity"; City of Fresno "individually and in their official capacity"; and John Doe 1 through 10 "individually and in their official capacity," purporting to allege causes of action under 42 U.S.C. § 1983 for "cruel and unusual punishment, excessive force, a deliberate indifference to protect [P]laintiff from physical brutality and false imprisonment under the 8th Amendment to the United States Constitution and the Universal Declaration of Human Rights." (Doc. 13.) On January 26, 2018, the undersigned screened and dismissed Plaintiff's Second Amended Complaint for failure to state a claim and

granted Plaintiff thirty days leave to file an amended complaint curing the pleading deficiencies identified in the order. (Doc. 15.)

On August 22, 2018, after having been granted three enlargements of time,[1] Plaintiff filed his Third Amended Complaint against Defendants Richard Madrid and Fresno Police officers John Does 1 through 20, purporting to allege causes of action under 42 U.S.C. § 1983 ("Section 1983") for infliction of cruel and unusual punishment/excessive force in violation of the Eighth Amendment and false arrest in violation of the due process clause of the Fourteenth Amendment. (Doc. 37.) Plaintiff seeks compensatory damages in the amount of $1,750,000 and punitive damages in the amount of $3,000,000 against Defendant Madrid, and compensatory damages in the amount of $20,000 and punitive damages in the amount of $25,000 against each Doe defendant. (*Id.* at 8.)

After screening Plaintiff's Third Amended Complaint, the Court finds that despite the explicit recitation of the deficiencies of Plaintiff's Second Amended Complaint, Plaintiff has failed to demonstrate any violation of federal law. Accordingly, the Court RECOMMENDS that Plaintiff's Third Amended Complaint be DISMISSED without leave to amend.

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's Third Amended Complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's well-pleaded factual allegations are taken as true, the Court need not "accept as true allegations that contradict matters

---

[1] *See* Docs. 17, 21, 25. Plaintiff's fourth request for an enlargement of time was denied, and Plaintiff was ordered to file his third amended complaint by August 20, 2018. (*See* Doc. 33.)

properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).

Persons proceeding pro se are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.

### III. DISCUSSION

**A. Plaintiff's Allegations**

Plaintiff alleges that on August 9, 2016, he was detained by Defendants John Does 1 through 20 (the "Doe Defendants"), employed as officers of the Fresno Police Department, while they conducted a "warrant check." (Doc. 37 at 10.) The police dispatcher informed the Doe Defendants that Plaintiff did not have any warrants for his arrest and was currently out of jail custody on bond. (*Id.*) The dispatcher also provided the Doe Defendants with the contact information for Defendant Madrid, identified in the Third Amended Complaint as a "bail bondsman" and a "Fresno P.D. contractor." (*Id*. at 3, 10.) According to Plaintiff, the Doe Defendants then contacted Defendant Madrid and advised him that Plaintiff was detained. (*Id*. at 10.) Defendant Madrid requested that the Doe Defendants provide the location of Plaintiff's detainment and to continue to detain Plaintiff until he arrived, so that Defendant Madrid could arrest Plaintiff. (*Id*.)

Plaintiff alleges that Defendant Madrid arrived at the location where Plaintiff was being detained and produced identification to one of the Doe Defendants, while three other Doe Defendants "remained surrounding" Plaintiff. (Doc. 37 at 10.) The Doe Defendants then "allowed" Defendant Madrid and another unnamed person to approach Plaintiff with handcuffs, whereupon Defendant Madrid initiated Plaintiff's "arrest" by "grabbing [P]laintiff by the throat while

3

simultaneously directing" the unnamed person to "grab ahold of [Plaintiff's] legs." (*Id.*)

Plaintiff contends that he began to "yell for help" as Defendant Madrid and his unnamed companion "forcefully extracted" Plaintiff from a seated position in his wheelchair by "both the throat and the legs." (Doc. 37 at 11.) Plaintiff was then "intentionally dropped to the pavement" whereupon Defendant Madrid and his unnamed companion "laid the entire weight of their bodies upon" Plaintiff as he "lay prone and motionless, screaming in pain." (*Id.*) According to Plaintiff, Defendant Madrid then pulled out a knife and cut both of Plaintiff's wrists, placed his knee on Plaintiff's left wrist, and began pulling Plaintiff's left hand up and back against Defendant Madrid's knee until Plaintiff's wrist broke. (*Id.*) Plaintiff alleges that the Doe Defendants "stoodby [sic] and did nothing as [P]laintiff screamed out to them for help" and then drove away "so they wouldn't be a witness to [P]laintiff's murder." (*Id.*)

Plaintiff alleges that the Doe Defendants returned to the scene and placed Plaintiff, in handcuffs, in the back seat of one of their patrol cars. (Doc. 37 at 11.) Plaintiff "pleaded" with the Doe Defendants to "at least loosen or take off the handcuffs to alleviate some of the pain." (Id.) According Plaintiff, neither Defendant Madrid nor the Doe Defendants "contacted the paramedics or an ambulance" for Plaintiff, yet Plaintiff thereafter was transported to a community hospital emergency room. (*Id.*) Plaintiff contends that, despite Defendant Madrid's insistence, he refused treatment at the hospital "for fear of suffering irreparable injury from sub-par surgical techniques and/or medical treatment." (*Id.* at 12.)

Plaintiff contends that after 10 hours he was eventually transported to Kaiser Permanente hospital, where he underwent surgery and was discharged later the same day, August 10, 2016. (Doc. 37 at 12.) Following Plaintiff's surgery, Defendant Madrid "escorted" Plaintiff out the hospital and placed him in the front passenger seat of a waiting Mercedes Benz, with his wheelchair placed in the back seat. (*Id.*) According to Plaintiff, the Doe Defendants "then departed, leaving [P]laintiff alone with Defendant Madrid a second time." (*Id.*) Defendant Madrid transported Plaintiff to Fresno County Jail, where he was informed that Plaintiff "had no warrants or new charges and was therefore free to leave." (*Id.*) Plaintiff exited the Jail and headed to a public bus stop. (Id. at 13.)

According to Plaintiff, before he could reach the bus stop Defendant Madrid "snuck up from behind" him and redirected Plaintiff by wheelchair to Defendant Madrid's waiting vehicle. (Doc. 37 at 13.) Defendant Madrid "forced" Plaintiff into the vehicle and was "driven around the city for hours," during which Defendant Madrid "repeatedly made threats" to Plaintiff such as "you better not do anything to make me mad." (*Id.*)

Plaintiff alleges he suffered injury to his hands and wrists and seeks monetary and punitive damages from Defendants. (Doc. 37 at 14–15.)

**B.    Plaintiff Fails to State a Claim Under Section 1983 Against Defendant Richard Madrid**

As set forth in the Court's first screening order, to state a cognizable claim under Section 1983, a plaintiff must allege facts demonstrating that he was deprived of a right secured by the Constitution or laws of the United States and that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). The Supreme Court has held that a private party defendant acts "under color of" state law if the conduct qualifies as state action under the Fourteenth Amendment. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 935 & n.18 (1982). It is the plaintiff's burden in bringing a claim under Section 1983 to allege, and ultimately establish, that the named defendants were acting under color of state law when they deprived him of a federal right. *Lee v. Katz*, 276 F.3d 550, 553–54 (9th Cir. 2002).

Acts done by a private individual or private company are generally not done "under color of state law," rendering unavailable a cause of action under Section 1983. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Price v. Hawaii*, 939 F.2d 702, 707–08 (9th Cir. 1991). As Plaintiff was previously advised, the Ninth Circuit has explicitly held that a bail bond agent such as Defendant Madrid is not a state actor acting under color of state law for purposes of Section 1983. *Ouzts v. Maryland Nat'l Ins. Co.*, 505 F.2d 547, 558 (9th Cir.1974) (en banc). *See also Boyd v. City of Oceanside Police Dep't,* Civil No. 11CV3039 LAB (WMc), 2013 WL 5671164, at *3 n.3 (S.D. Cal. Oct. 11, 2013); *Dixon v. Wesbrook*, No. 1:11–CV–1290 AWI JLT, 2012 WL 6160797, at *6 (E.D. Cal. Dec.11, 2012). The *Ouzts* Court reasoned that "the bail bondsman is in the business in order to make money and is not acting out of a high-minded sense of devotion to the administration of

justice." *Ouzts*, 505 F.2d at 554–55. It also held that bail bond agents who did not comply with the state statutes governing their actions are not acting under color of state law. *Ouzts*, 505 F.2d at 553–54; *see also Collins v. Womancare*, 878 F.2d 1145, 1153 (9th Cir. 1989). Plaintiff's allegations strongly suggest that Defendant Madrid did not follow California law concerning bail bond agents, *see* Cal. Penal Code § 1299 *et seq.*, and, as such, are "antithetical" to a claim that Defendant Madrid's actions are attributable to a state policy. *Dixon*, 2012 WL 6160797, at *6. *See also Ouzts*, 505 F.2d at 553 ("In no way did California law authorize, permit, encourage or tolerate the conduct of the appellees. Indeed, section 847.5 expressly condemned and criminalized such conduct. The appellees' action can thus only be described as private conduct attempting the enforcement of a private contract in total defiance of existing state law.").

In an apparent attempt to avoid the application of *Ouzts*, Plaintiff alleges that Defendant Madrid was a "contractor" with the Fresno Police Department and acted "in concert with" Fresno Police Department officers. Such allegations are conclusory and not entitled to be assumed true. *See Iqbal*, 556 U.S. at 681; *In re Gilead Scis. Sec. Litig.*, 536 F.3d at 1055. Moreover, while some courts outside the Ninth Circuit have held that bail bond agents act under color of state law when they act "in concert" with police officers, *see, e.g., Landry v. A–Able Bonding, Inc.*, 75 F.3d 200, 204 (5th Cir. 1996); *Jackson v. Pantazes*, 810 F.2d 426, 429–30 (4th Cir. 1987), this Court, as it noted in *Dixon*, "is . . . bound to Ninth Circuit precedent" in *Ouzts*. *See Dixon*, 2012 WL 6160797, at *6.

Yet, even if the undersigned were inclined to depart from *Ouzts*, Plaintiff's allegations fall short of demonstrating that the Fresno Police Department "so far insinuated itself into a position of interdependence with" Defendant Madrid that it "must be recognized as a joint participant in the challenged activity . . . .," such that Plaintiff could maintain a civil rights lawsuit revolving around private action. *Gorenc v. Salt River Project*, 869 F.2d 503, 507 (9th Cir. 1989) (quoting *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725 (1961)). Such joint action between state and private citizens, so as to render the private citizens acting under color of state law for purposes of Section 1983, "requires a substantial degree of cooperative action." *Collins*, 878 F.2d at 1154.

For example, in *Howerton v. Gabica*, the Ninth Circuit found joint action between a landlord,

Gabica, and various police officers based on their sustained, joint efforts to evict Howerton, one of Gabica's tenants. 708 F.2d 380, 385 (9th Cir. 1983). As the Court in *Collins* observed, the ruling in *Howerton* was "careful[ly] . . . limit[ed]" by observing:

> This case involves more than a single incident of police consent to "stand by" in case of trouble. Police were on the scene at each step of the eviction . . . . Moreover, the police officer actively intervened—he privately approached the Howertons and recommended that they leave the trailerhouse. An unsolicited visit by a police officer is hardly passive, or "merely standing by."

*Collins*, 878 F.2d at 1154 (quoting *Howerton*, 708 F.3d at 385). The holding in *Howerton* "was therefore premised on the fact that the Gabicas 'repeatedly requested aid by the police to effect the eviction, and the police intervened at every step.'" *Id*.

Here, the only "cooperative" or "joint" action alleged between the Doe Defendant police officers and Defendant Madrid is that the Doe Defendants contacted Defendant Madrid and provided him with the location where Plaintiff was being detained. A "single incident" of alleged cooperation is not sufficient to constitute joint action under Section 1983. *See Gabica*, 708 F.2d at 385. Plaintiff's remaining allegations concern not what actions the Doe Defendants took in concert with Defendant Madrid, but what actions they did *not* take. Indeed, the gravamen of Plaintiff's Section 1983 claim against the Doe Defendants is that they had the "legal obligation" to stop Defendant Madrid's acts "but failed to do so." (Doc. 37 at 9.). Thus, Plaintiff's well-pleaded factual allegations, taken as true, amount to a *failure* by the Doe Defendants to "intervene[] at every step," in contrast to *Howerton*, and therefore do not establish the significant government involvement by the Doe Defendants with Defendant Madrid's actions so as to constitute state action under Section 1983. *See Blum v. Yaretsky*, 457 U.S. 991, 1004-05 (1982) ("Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment."). *See also Collins*, 878 F.2d at 1154; *Harke v. Hoffman*, No. 1:10-CV-00023-BLW, 2012 WL 12896581, at *7 (D. Idaho Mar. 13, 2012), *aff'd*, 543 F. App'x 698 (9th Cir. 2013).

In sum, Defendant Madrid's alleged conduct as a bail bondsman, no matter how wrongful, is "not within the protective orbit of section 1983." *Ouzts*, 505 F.2d at 550 ("For such conduct the

wrongdoer faces potential liability in state courts, but a federal action would not lie under section 1983."). Thus, Plaintiff's Third Amended Complaint fails to state a Section 1983 claim against Defendant Madrid. *See Paige v. Cuevas*, No. 2:14–cv–2773 GEB DAD PS, 2015 WL 2091684, at *2–3 (E.D. Cal. May 4, 2015) (recommending dismissal of Section 1983 complaint against bail bondsman for lack of subject matter jurisdiction because no state action present). *See also Ouzts*, 505 F.2d at 555; *Dixon*, 2012 WL 6160797, at *6; *Boyd,* 2013 WL 5671164, at *3 n.3.

**C.     Plaintiff Fails to State a Section 1983 Claim Against the Doe Defendants**

As set forth above, Plaintiff's Section 1983 claim against the Doe Defendant Fresno Police officers is based on allegations that they failed to act when legally required to do so. Specifically, Plaintiff alleges that the Doe Defendants engaged in "excessive force" when they "stoodby [sic] idle" and "passively observed" as Defendant Madrid "pulled [P]laintiff from his wheelchair, held Plaintiff on the ground, intentionally pulled Plaintiff's wrist to the extent that it was broken, and then pulled a knife whereupon [Defendant Madrid] set about slashing both of Plaintiff's wrists," all in "deliberate indifference to a known threat to the safety and life" of Plaintiff. (Doc. 37 at 9.)

To begin with, as the Court previously pointed out, Plaintiff's Section 1983 claim cannot be predicated on the Eighth Amendment's prohibition against cruel and unusual punishment, such prohibition does not apply until after conviction and sentence. *See Pierce v. Multnomah County, Oregon*, 76 F.3d 1032, 1042 (9th Cir. 1996.) Because Plaintiff was not a convicted prisoner at the time of the subject incident(s), the Fourth Amendment rather than the Eighth Amendment protects Plaintiff from the use of excessive force. *See Graham v. Connor*, 490 U.S. 386, 393 & n.6 (1989) (Fourth and Eighth Amendment "primary sources of constitutional protection against physically abusive governmental conduct"; where excessive force claim arises in the context of effecting arrest it is properly characterized as invoking the protections of the Fourth Amendment); *Reed v. Hoyt*, 909 F.2d 324, 329 (9th Cir. 1989) ("[E]xcessive force claims arising before or during arrest are to be analyzed exclusively under the fourth amendment's reasonableness standard rather than the due process standard . . . .").

To the extent Plaintiff intended to bring his excessive force claim against the Doe Defendants under Section 1983 for violation of Plaintiff's *Fourth* Amendment rights, Plaintiff has not alleged

that the use of force was objectively unreasonable in light of the facts and circumstances confronting the officers, without regard to the officer's underlying intent or motivation. *See Graham*, 490 U.S. at 397. In fact, as has been seen, Plaintiff does not allege *any* use of force by the Doe Defendants— his claim is entirely predicated on the failure by the Doe Defendants to prevent Defendant Madrid's use of force against Plaintiff.

"[G]overnment officials generally are not liable under section 1983 for their failure to protect citizens from dangerous situations which state officials neither created nor exacerbated." *Escamilla v. City of Santa Ana*, 796 F.2d 266 (9th Cir. 1986). There are no allegations in the Third Amended Complaint that the Doe Defendant Fresno Police Department officers somehow created the danger that caused or enhanced Plaintiff's alleged injuries. While police officers "have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen," *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000), such duty has been imposed only in situations where a fellow law enforcement officer is employing the unlawful force or where a private third party harms a person in official custody. *See, e.g., id.* at 1289–90; *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995); *United States v. Koon*, 34 F.3d 1416, 1447 (9th Cir. 1994), *aff'd in part, rev'd in part*, 518 U.S. 81 (1996); *Ting v. United States*, 927 F.2d 1504, 1511–12 (9th Cir. 1991). *See also Gillette v. Malheur Cty.*, No. 2:14-CV-01542-SU, 2016 WL 3180228, at *7 (D. Or. May 3, 2016) ("[A]ll the relevant cases show a Fourth Amendment duty to intercede that is clearly limited to the context of excessive force *and police officers*.") (emphasis added) (internal quotations omitted); *Monteilh v. Cty. of Los Angeles*, 820 F. Supp. 2d 1081, 1092 (C.D. Cal. 2011) ("[T]he vast majority of cases . . . involve an officer's failure to intercede when *fellow officers* are employing unlawful force) (emphasis added). The undersigned is not aware of any Ninth Circuit authority holding that law enforcement officers may be liable for failing to intercede where a non-state-actor inflicts physical harm on a person who is not in custody. Pertinent authority suggests the opposite.[2] *See id.* ("An officer's duty to intercede arises only when a fellow officer is acting under the color of

---

[2] Plaintiff does not allege that he was in the custody of the Doe Defendants during the time the alleged acts were committed by Defendant Madrid. Instead, he pleads that he was "detained" until Defendant Madrid arrived and arrested him. (*See* Doc. 37 at 10.) A person who is detained by law enforcement, while perhaps not free to go, is not "in custody." *See United States v. Butler*, 249 F.3d 1094, 1098 (9th Cir. 2001).

9

state law, but not when the fellow officer is engaged in private violence."); *Dunkin v. Lamb*, 500 F. Supp. 184 (D. Nev. 1980) (stating that the court was "inclined" to grant defense motion for summary judgment in case where the plaintiff claimed that the failure of the defendant undersheriff and of other unknown officers of codefendant police department to prevent the use of excessive force by bail bondsmen in taking physical possession of plaintiff violated under Section 1983, but staying ruling to permit pro se plaintiff to submit a "more adequate memorandum of points and authorities" in opposition to the motion). *Cf. Bracken v. Kyo-ya Hotels & Resorts, LP*, No. CIV. 11-00784 SOM, 2012 WL 5493997, at *6 (D. Haw. Nov. 13, 2012) (denying motion to dismiss the plaintiff's Fourth Amendment failure-to-intercede claim against law enforcement officer Chung who "worked with and alongside" the private security guard Okura who applied the force, observing that the plaintiff's complaint adequately pleaded "concerted action" between Chung and Okura and that "[t]o the extent Okura and Chung were acting in concert, Chung may have had a duty to stop Okura" as "fellow officers.").

The undersigned therefore finds that Plaintiff has failed to state a claim under Section 1983 for violation of Plaintiff's Fourth Amendment right to be free of excessive force against the Doe Defendant Fresno Police officers for their failure to intercede on Plaintiff's behalf against acts undertaken by Defendant Madrid.

**D.     Leave to Amend Will Not Be Recommended**

When dismissing a complaint, the Ninth Circuit has stated that "leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks omitted); *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. (9th Cir. 1996). However, once the court has already granted a plaintiff leave to amend a complaint, the court's discretion in determining whether to allow additional opportunities to amend is particularly broad. *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 794 (9th Cir. 2012) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616,622 (9th Cir.2 004)); *Chodos v. West Publishing Co.*, 292 F.3d 992, 1003 (9th Cir. 2002).

Further amendment is not appropriate in this case. When dismissing the prior complaint, the

undersigned advised Plaintiff that any third amended complaint must be based upon a well-founded belief that a cognizable or arguable legal theory exists that would support his claims. Plaintiff has repeatedly demonstrated that he is unable to marshal facts sufficient to constitute a cognizable federal claim and that the addition of more detailed factual allegations or revision of Plaintiff's claims will not cure the defects of his Third Amended Complaint. Thus, the undersigned declines to give any further leave to amend and recommends that the action be dismissed.

### IV. CONCLUSION AND RECOMMENDATION

Accordingly, IT IS HEREBY RECOMMENDED that Plaintiff's Third Amended Complaint be DISMISSED without leave to amend.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. **Within thirty (30) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **September 21, 2018**          /s/ *Sheila K. Oberto*
                                       UNITED STATES MAGISTRATE JUDGE